OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

November 26, 2002

Mr. Ronald Philo, Ph.D., Chair                          Opinion No. JC-0583
Anatomical Board of the State of Texas
The University of Texas Health Science          Re: Whether a body donated to a named college
  Center at San Antonio                               or university is a body subject to distribution by
San Antonio, Texas 78229-3900                    the Anatomical Board of the State of Texas, and
                                                                  related questions   (RQ-0549-JC)

Dear Mr. Philo:

        You have asked a series of questions on behalf of the Anatomical Board of the State of Texas
(the "board"). While this office has dealt with some of the topics in question before, see Tex. Att'y
Gen. Op. Nos. JM-663 (1987), H-663 (1975), WW-720 (1959), others appear to be questions of first
impression. Your questions concern, in particular, the board's authority to distribute cadavers that
have been donated to a named institution, the board's authority to set fees, and the board's authority
to transfer the cadavers or parts of the cadavers out of state. Chapters 691 and 692 of the Health and
Safety Code apply to the issues you raise.

        The board's structure, powers, and duties are set forth in chapter 691. We note at the outset
that chapter 691 is not a particularly detailed scheme and does not provide a great deal of guidance
with respect to some of these issues. The statute has been subject to only limited revision in the
ninety-five years of the board's existence, and we have found no recorded court cases interpreting
the chapter.

        The board's membership represents the state's chiropractic, osteopathic, medical, and dental
schools, and consists of professors of surgery or basic anatomical sciences appointed by the chief
executives of those schools. See TEX. HEALTH & SAFETY CODE ANN. § 691.002 (Vernon 1992).
The board's general duties are to "distribute bodies to institutions and persons authorized to receive"
them and to adopt rules to ensure that such bodies are treated with respect. Id. § 691.022. A "body"
for these purposes is "a human corpse." Id. § 691.001(2). The board receives bodies from political
subdivisions. See id. § 691.023. Further, bodies are received either through the written gift of a
decedent under section 691.028, or by the terms of section 692.005 of the Anatomical Gift Act,
under which the board is a permissible donee. See id. §§ 691.028(a) ("An adult living in this state
who is of sound mind may donate his body by will or other written instrument to a medical or dental
school or other donee authorized by the board to be used for the advancement of medical science."),
692.005(7) (Vernon Supp. 2002) (board "may be donee[] of gifts of bodies or parts").

The board is required to distribute bodies "to schools and colleges of chiropractic, osteopathy, medicine, or dentistry incorporated in this state, to physicians, and to other persons as provided by this section," giving "priority to the schools and colleges that need bodies for lectures and demonstrations." *Id.* § 691.030(a)-(b) (Vernon 1992). The board shall distribute remaining bodies "to the schools and colleges proportionately and equitably according to the number of students in each . . . receiving instruction or demonstration in normal or morbid anatomy and operative surgery." *Id.* § 691.030(c). Additionally, the board may "distribute to the State Board of Morticians as many bodies as necessary for use in conducting examinations," and "may distribute to a school of mortuary science recognized and approved by the State Board of Morticians as many bodies as the board considers necessary for use in instruction." *See id.* § 691.030(e). Finally, it may transport bodies to another state if there is a shortage in that state, but only if the other state agrees to ship surplus bodies to Texas in the event of a shortage here, and if the legal donor of the body has authorized such transportation. *Id.* § 691.030(f). The board may collect "reasonable and necessary fees for receiving and distributing bodies." *Id.* § 691.008(a).

Chapter 692 of the Health and Safety Code, popularly styled the Anatomical Gift Act, permits a class of persons, including the decedent, to donate either a dead human body or parts thereof, and details procedures related to such donation. *See also* TEX. TRANSP. CODE ANN. § 521.401 (Vernon 1999) (providing for statement-of-gift cards). Among the permissible recipients of such bodies or body parts are medical and dental institutions and the Anatomical Board. *See* TEX. HEALTH & SAFETY CODE ANN. § 692.005 (Vernon Supp. 2002). Section 692.005(3), which is the specific focus of your inquiry, provides that "an accredited medical, chiropractic, or dental school, college, or university" may be a donee of gifts of bodies and parts. *Id.* § 692.005(3).

You ask first whether a "body donated to a named school, college, or university" under either section 691.028(a) or section 692.005(3) is "subject to distribution by the [board] . . . ."[1] The board's authority to distribute bodies extends only to those bodies "received under" chapter 691. Section 691.030(a) requires the board or the board's representative to "distribute bodies received under this chapter." *Id.* § 691.030(a) (Vernon 1992).

We conclude that a body donated to an institution named in chapter 691 is "received under [chapter 691]", and is subject to distribution by the board under section 691.030, unless the donation is specifically made under the Anatomical Gift Act to an institution other than the board. A body or body parts specifically donated under section 692.005, part of the Anatomical Gift Act, is not received under chapter 691 and is not subject to distribution by the board unless the board itself, under section 692.005(7), is the donee. *See id.* § 692.005 (Vernon Supp. 2002). In our opinion, this is the case even when a gift specifically made under section 692.005 is to an institution named in chapter 691.

Our conclusion here modifies that reached in Attorney General Opinion H-663 (1975), which determined that a person's gift of "his entire body to a medical school, dental school, or a college,

---

[1]Letter from Ron Philo, Chairman, Anatomical Board of the State of Texas, to Honorable John Cornyn, Texas Attorney General, at 2 (May 9, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

physician, or surgeon authorized by the Board to receive bodies" under the statutory predecessor of chapter 691 would come within the provisions of either that provision or the Anatomical Gift Act, and would therefore come within the board's jurisdiction. *See* Tex. Att'y Gen. Op. No. H-663 (1975) at 3-4.

> [W]here a person gives his entire body to a medical school, dental school, or a college, physician, or surgeon authorized by the Board to receive bodies under article 4584, the gift would come within the provisions of either article 4584 or the Anatomical Gift Act. In our opinion the Board may consider this class of gifts to be made under article 4584 and thus under its jurisdiction. However, [certain] classes of gifts may be made only under the Anatomical Gift Act and are not within the Board's jurisdiction . . . .

*Id.* The opinion lists five classes of gifts that could be made only under the Anatomical Gift Act and were therefore not subject to the board's jurisdiction:

> 1) A gift made by a person of only part of his body[;]
>
> 2) A gift made by a person of all or part of another person's body under section 3(b) of the Anatomical Gift Act [now section 692.004 of the Health and Safety Code;]
>
> 3) A gift made to an "individual specified by a licensed physician for therapy or transplantation needed by him." Sec. 4(4) [now section 692.005(4);]
>
> 4) A gift made to a hospital. Sec. 4(1) [now section 692.005(2);]
>
> 5) A gift made to a surgeon, physician, college, or university not authorized by the Board to receive bodies under article 4584.

*Id.* at 4. We now believe that this list must include another class of gifts—a gift by a decedent of his entire body to a medical school, dental school, or a college, physician, or surgeon authorized by the board to receive bodies that is expressly made under chapter 692. Given that the donee's specific intent to donate under chapter 692, as expressed in the terms of the gift, is entitled to be effectuated, *see* authorities cited *infra,* the Anatomical Board may not consider a gift expressly made under the Anatomical Gift Act, even to an institution named in chapter 691, as a body received under chapter 691.

Finally, the board's authority over gifts of bodies that come within chapter 691 is not unlimited. Generally, Texas law favors the effectuation of a decedent's specific intentions with regard to his or her gifts. The gift of one's own dead body to a specific institution is certainly an "expression of the desire of and the direction by the testator as to what shall be done with

the property left by him." *Boyles v. Gresham*, 263 S.W.2d 935, 937 (Tex. 1954). As such an expression, the law requires that it be interpreted and enforced "to cause the real intentions and wishes of [the testator] to be . . . carried into effect." *Price v. Taliaferro*, 254 S.W.2d 157, 159 (Tex. Civ. App.–Fort Worth 1952, writ ref'd n.r.e.) (citation omitted). While the term of art used in chapter 691 is "subject to distribution," we do not read the chapter to allow the board to change the terms of the donor's gift, and to give a cadaver to another institution. Accordingly, the jurisdiction of the board over bodies donated to named institutions is limited by the fact that the property has been given to a particular entity, rather than the board. The board may take account of these gifts in apportioning other cadavers to the institutions involved and may collect the fees listed under section 691.008 discussed at further length below for them.

Your next question concerns fees the board may charge in relation to the receipt and distribution of bodies. *See* Request Letter, *supra* note 1, at 3. As you note, section 691.008(a) provides that "[t]he board may set and collect reasonable and necessary fees for receiving and distributing bodies." TEX. HEALTH & SAFETY CODE ANN. § 691.008(a) (Vernon 1992). Further, section 691.032 requires a person or institution receiving a body "under this chapter [to] pay in a manner *specified by the board, or as otherwise agreed on*" the cost of the body's distribution so that the state or a political subdivision or representative of the state "does not incur any expense." *Id.* § 691.032 (emphasis added). You ask whether either of these statutes gives the board the authority "to determine the fees that the institutions in possession of the bodies charge to the institutions that will use the bodies for the advancement of medical or dental science." Request Letter, *supra* note 1, at 3. Neither, in our view, does.

We note that it is unclear to us by what authority an institution possessing a cadaver pursuant to either chapter 691 or 692 might charge another institution to use it, given that nothing in either of the statutes seems to authorize the sale of cadavers transferred or received by institutions under either of these chapters. However, given that you have not asked about this issue, we do not consider it further.

As an administrative agency of the state, the board has only those powers expressly granted it "together with those necessarily implied." Tex. Att'y Gen. Op. No. H-663 (1975) at 2 (citing *Stauffer v. City of San Antonio*, 344 S.W.2d 158, 160 (Tex. 1961); *accord Reliant Energy Inc., v. Pub. Util. Comm'n*, 62 S.W.3d 833, 837 (Tex. App.–Austin 2001, no pet.). While section 691.008(a) provides that the board may "set *and collect* reasonable and necessary fees for receiving and distributing bodies," the phrase "and collect" makes clear that the section is concerned with fees charged by the board itself, not by a third party. *See* TEX. HEALTH & SAFETY CODE ANN. § 691.008 (Vernon 1992) (emphasis added). The history of the measure is to the same effect: it was a provision of Senate Bill 201 of the 69th Texas Legislature, enacted pursuant to the recommendations of a Texas Sunset Advisory Commission staff report on the board.[2] As the commission report notes:

> The board currently collects fees for the receipt of cadavers by
> approved institutions; however, it has no statutory authority to make

---

[2]*See* Act of May 22, 1985, 69th Leg., R.S., ch. 485, 1985 Tex. Gen. Laws 2054.

such collections. The fees are appropriate and the statute should be amended to give the board this authority.

TEX. SUNSET ADVISORY COMM'N STAFF EVALUATION, ANATOMICAL BD. OF TEX. 2 (1984).

Nor does section 691.032 provide the regulatory authority about which you ask. While the statute contemplates that payments for the cost of a body's distribution may be "specified by the board," it also allows that such payments may be "otherwise agreed on." TEX. HEALTH & SAFETY CODE ANN. § 691.032 (Vernon 1992). The principal concern of the section is that the state, its agents, and political subdivisions not bear the cost of distributing cadavers. The costs are paid "so that the state, a county, a municipality, or an officer, employee, or representative of the state, a county, or a municipality does not incur any expense." *Id.* While the board exercises some powers of disposition over cadavers, it does not have express regulatory authority over the kind of fee-setting about which you ask. Given the authorities over fee-setting and collection that are explicitly granted the board in the statute, under the maxim "expressio unius est exclusio alterius," we cannot imply further such powers. The statute does not give the board the authority to regulate fees charged by another entity to a third party.

Your remaining questions concern the authority of the board to transport bodies out of Texas. *See* Request Letter, *supra* note 1, at 3-4. Again the statutory authority here, like that for the setting and collecting of fees, was provided by Senate Bill 201 on the basis of Sunset Commission recommendations. The same legislation also empowered the board to transfer bodies to approved institutions out-of-state. *See* Act of May 22, 1985, 69th Leg., R.S., ch. 485, § 3, 1985 Tex. Gen. Laws 2054, 2056. This had also been a Sunset Commission recommendation:

> Currently, Texas has an excess supply of cadavers, while medical schools in other states are in need of additional bodies. The board should be given authority to transfer bodies, in excess of Texas' needs, to approved institutions out of state for the advancement of medical teaching and medical science.

TEX. SUNSET ADVISORY COMM'N STAFF EVALUATION, ANATOMICAL BD. OF TEX. 2 (1984). As the bill analysis for Senate Bill 201, the legislation which enacted this provision, explained it, the section in question:

> authorizes the board to transport bodies to other states, if the other state agrees to reciprocate when Texas has a shortage and they have a surplus; requires that the board obtain authorization from the person willing their body or from the family donating the body, in order to transport that body out of state.

SENATE COMM. ON GOVERNMENT ORGANIZATION, BILL ANALYSIS, Tex. S.B. 201, 69th Leg., R.S. (1985). Health and Safety Code section 691.030(f) provides:

> The board may transport *a body* to another state if there is a shortage of bodies in that state, *but only if the other state agrees* to ship surplus bodies to this state when the board determines that there is a shortage in this state and if
>
> (1) the deceased donated his body in compliance with Section 691.028 and at the time of the donation authorized the board to transport the body outside this state; or
>
> (2) the body was donated in compliance with Chapter 692 (Texas Anatomical Gift Act) and the person authorized to make the donation under Section 692.004 authorized the board to transport the body outside this state.

TEX. HEALTH & SAFETY CODE ANN. § 691.030(f) (Vernon 1992) (emphasis added). As you note, this office has interpreted the word "state" for the purpose of this section to mean a state of the United States. *See* Tex. Att'y Gen. Op. No. JM-663 (1987) at 3.

You ask whether the clause "if the other state agrees to ship surplus bodies to this state" means that "someone in the recipient state must purport to bind that state to ship bodies to Texas if the Board determines a shortage of bodies exists in this state." Request Letter, *supra* note 1, at 3. In our view, that is the consequence of the statute's plain language that transportation is permissible "only if the other state agrees" to this condition of section 691.030(f). *See Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex. 2002) ("When construing a statute [the Texas Supreme Court] ascertains the Legislature's intent from the plain meaning of the actual language used."); TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

Again, what legislative history is available is to the same effect. In the February 12, 1985, public hearing of the Senate Committee on Governmental Organization, the committee chair asked:

> About the only problem you have . . ., as I recall the testimony, [is] transferring between states, *if one state and you have a reciprocity transferring bodies, is that correct?* Do you want to elaborate just a moment on that?

*Hearings on Tex. S.B. 201 Before the Senate Comm. on Governmental Organization,* 69th Leg., R.S. (Feb.12, 1985) (emphasis added). Dr. William Gonyea, the President of the Anatomical Board, responded:

> *Presently we have no regulation that allows us to ship out of state,* and we have in the bill provided that option *so in times of surplus we can help our neighboring states.* We have a very good system in this state, and for the last several years have had a surplus of bodies.

> *Obviously this can change very dramatically, so we would like to maintain a surplus* that provides an opportunity for us to carry on the function of educating medical students and in case something would occur that the citizens of this state elected not to donate their bodies, but in times like we have presently, we certainly can provide small numbers of bodies to other states.

*Id.* (emphasis added).

As Dr. Gonyea's testimony makes clear, the purpose of the reciprocity requirement was to insure that Texas maintain an adequate supply of cadavers for its own needs. The mechanism chosen to achieve that end was the requirement of an agreement that the other state involved in the transaction would supply Texas with cadavers in the event of a scarcity here. The board itself would appear to agree, given that one of the conditions it sets by administrative rule for exportation of a body or a body part is that "the board has found that the proposed receiving state has a reciprocal policy concerning such matters." 25 TEX. ADMIN. CODE § 477.4(c)(1)(C) (2002).

Given that the board is obliged both by statute and by rule to assure itself of the reciprocal obligation of other states before transferring bodies to them, it must assure itself of the bona fides of any such agreements and of the power of the person purporting to bind the other state to do so. Thus, as you note, the board could not make such an agreement with a private party, such as a private hospital or medical school. Whether in any particular instance a contracting party had the power to bind another state is a matter to be decided on a case-by-case basis.

You ask, however, whether the board could rely upon a prior existing agreement between Texas and another state in order to permit the board to transfer a body to a private institution, such as a private hospital or medical school. *See* Request Letter, *supra* note 1, at 3. The statutory language would appear to permit such a result. Section 691.030(f) requires that the other state agree to ship surplus bodies when called upon to do so by the board. *See* TEX. HEALTH & SAFETY CODE ANN. § 691.030(f) (Vernon 1992). If an agreement to that effect made with a party who has the proper authority to bind the other state is already in force, and if the transfer of a body to a private institution is made pursuant to that agreement, it can certainly be argued that the necessary condition has been satisfied.

Your final question is whether section 691.030 authorizes the board to transport body parts to another state. Request Letter, *supra* note 1, at 4. The statute by its terms speaks solely of bodies. By contrast, for example, the Anatomical Gift Act permits the donation of body parts as well as bodies. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 692.003, .004 (Vernon 1992 & Supp. 2002). As noted above, the board's rule would appear to permit the transporting of body parts. *See* 25 TEX. ADMIN. CODE § 477.4 (2002). Generally a regulatory body's construction of its statute, so long as it is reasonable, is entitled to some deference. *See Steering Comms. for Cities Served by TXU Elec. v. Pub. Uitl. Comm'n*, 42 S.W.3d 296, 300 (Tex. App.–Austin 2001, no pet.). However, we are also conscious of the maxim "expressio unius est exclusio alterius," the expression of one thing is the exclusion of another, which might suggest that authority to transport "bodies" did not include the

power to transport "body parts." Accordingly, we conclude that the board may wish out of an abundance of caution to seek legislative clarification of its authority to make such arrangements with respect to body parts.

### S U M M A R Y

A body donated to an institution named in chapter 691 of the Health and Safety Code is "received under [chapter 691]" and is "subject to distribution" by the Anatomical Board, unless the donation is specifically made under chapter 692 of the code, the Anatomical Gift Act, to an institution other than the board. A body donated under the Anatomical Gift Act is not received under chapter 691, and hence not "subject to distribution" by the board unless the board itself is the donee under section 692.005(7).

A body received under chapter 691 may be taken account of in the apportionment of other cadavers by the board to these institutions and in the assessment of fees by the board under section 691.008. The board may not give cadavers donated by decedents to a specific institution to another institution.

Neither sections 691.008(a) nor 691.032 authorize the board to regulate fees charged by institutions transferring bodies to third parties. In order for the board to transport bodies to another state, it must have an agreement with the other state to reciprocate should Texas have an insufficient number of cadavers. The board must assure itself of the capacity of the signatory to such an agreement to bind the other state. However, if such an agreement is in place, and if the transfer of cadavers to a private institution is made pursuant to that agreement, the board may at its discretion supply cadavers to private institutions in a reciprocating state. Legislative clarification of the board's authority to transfer body parts as well as bodies is advisable.

Very truly yours,

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General, Opinion Committee